**Andres FUENTES et al., Appellants,**

**v.**

**George HIRSCH et ux., Appellees.**

**No. 6138.**

Court of Civil Appeals of Texas, El Paso.

Oct. 6, 1971.

Rehearing Denied Nov. 3, 1971.

Hardie, Grambling, Sims & Galatzan, William T. Deffebach, El Paso, for appellants.

Pearson & Speer, Ray Pearson, James M. Speer, Jr., Theodore Hollen, III, El Paso, for appellees.

## OPINION

PRESLAR, Justice.

Appellees George Hirsch and his wife, Maria Del Refugio Hirsch brought this suit in trespass to try title against Appel-

lants and the City of El Paso, the property in dispute being the west 25 feet of a city lot. Appellant, Charles R. Carter Investment Corporation filed a cross-action in trespass to try title. On findings of the jury favorable to Appellees, the trial Court rendered judgment. The City of El Paso has not appealed. The judgment of the trial Court is reversed and rendered.

Appellees pleadings, for our purposes, set up the three and five year statute of limitations and further, that record superior title is in them as they had purchased the property for value and without notice of any claim of Appellant Charles R. Carter Investment Corporation who, if it held at all, held by virtue of a prior unrecorded deed. All Appellants answered by plea of not guilty and general denial and it was only Charles R. Carter Investment Corporation that filed the cross-action. Stipulation was made by all parties that Charles R. Carter is the common source of title, who conveyed to Andres Fuentes by two Warranty Deeds duly recorded in 1940, Lots One and Two in Block One-Hundred-and-Eleven, Kern Place Addition to the City of El Paso, Texas, according to the map of said block filed in the office of the County Clerk of El Paso County Texas, recorded in Book 509, Front of Deed Records of the County.

The map referred to is the dedication map or plat of Block 111, it shows that Mesita Avenue runs approximately east and west; that Mesa Avenue runs approximately north and south; that on the northeast corner where Mesita and Mesa intersect, is Lot One and with Lot Two adjoining it to the east. That both lots face on Mesita and that Lot One, being the corner lot, has its entire western side adjoining Mesa Avenue. Mr. Fuentes built his home on this property and resided there until 1957. The home is constructed on Lot Two with a garage being on the western part of Lot Two and the eastern part of Lot One. The balance of Lot One has been used mainly as a yard and it is surrounded by a fence on its northern, western, and southern sides. The western 25 feet of Lot One in controversy contains none of the permanent improvements except the fence. On November 10, 1955, Mr. Fuentes and his wife executed an instrument in the form of a general Warranty Deed to Charles R. Carter Investment Corporation with the description of the property being as follows:

"The west twenty-five (25) feet of Lot One (1), Block III, Kern Place Addition to the City of El Paso, El Paso County, Texas."

Immediately following the Warranty clause in this deed is the following paragraph:

"It is expressly understood by the parties herein that should the land herein conveyed no longer be used for road purposes, title shall revert to the Grantor without the need for any further action on his part."

This Deed was not recorded prior to the institution of this lawsuit. According to Mr. Fuentes, the purpose of this conveyance was to enable the Grantee corporation to hold the said twenty-five (25) feet of land for the future widening of Mesa Avenue for a turning lane from Mesita Avenue so that the Grantee corporation could develop other property immediately to the north of Lots One and Two, should the City of El Paso ever require a turning lane in the interest of smoother flow of traffic on Mesa Avenue. At the time of this Deed in 1955, neither Mr. Carter, Mr. Fuentes, nor the Grantee corporation owned any property north of Lots One and Two, but the Charles R. Carter Investment Corporation did acquire such property in 1963.

The evidence is to the effect that for many years, Mr. Carter and Mr. Fuentes were business partners and associates as Texaco distributors; that in 1954, the business was incorporated as Carter Petroleum Corporation of which Mr. Fuentes became president. At that time, the Charles R. Carter Investment Corporation was formed with Mr. Carter as its president and Mr. Fuentes as its Vice-President.

In March of 1956, an indenture was executed by the City of El Paso and Charles R. Carter Investment Corporation whereby certain properties were exchanged, one piece of property being conveyed by the Investment Corporation to the City of El Paso being described as a part or portion of Lot One, in Block 111, of the Kern Place Addition to the City of El Paso and which is then particularly described by the controlling metes and bounds. According to the Appellees' surveyor, this strip is some twenty feet wide and one-hundred-twenty-one (121) feet long and adjoins Lot One' along its entire western side. No part of this strip lies within Lot One nor within Block 111.

In July of 1957, Mr. and Mrs. Fuentes sold their home to Mr. and Mrs. Lewis, by general Warranty Deed, the description of the property being as follows:

"Lots One (1) and Two (2), Block One-Hundred Eleven (111), Kern Place Addition to the City of El Paso, Texas, according to the Map of Record in the Front of Book 509, Deed Records of El Paso County, Texas, excepting 25 feet heretofore conveyed to widen Mesa Road."

Finally, on September 22, 1959, Mr. and Mrs. Lewis conveyed the property by general Warranty Deed to the Appellee, Maria Del Refugio Hirsch, as her separate estate and here the description is as follows:

"Lots One (1) and Two (2) in Block One-Hundred-Eleven (111) of Kern Place Addition to the City of El Paso in El Paso County, Texas, according to the map of said Block III on file and of record in the front of Book 509, Deed Records of said County, excepting, however, that portion of said Lot 1 heretofore conveyed for the widening of Mesa Avenue."

According to the tax records beginning with the year 1957, continuing through the year 1969, the west 25 feet of Lot One was excluded from the description in the tax notices sent to Mr. and Mrs. Lewis and to Mr. and Mrs. Hirsch. The records in the tax office reflects that the west 25 feet of Lot One was exempt for highway purposes. Whether or not this was a mistake in the taxing offices, the record is clear that the Appellees have not paid any taxes on the disputed west 25 feet at any time. This suit was commenced by Appellees on February 11, 1969, less than ten (10) years from the date of their deed.

The case was submitted to the jury on the theories that Art. 6627, Vernon's Ann.Civ. Stat. and the three and five year statutes of limitations were applicable. Jury findings favorable to the Appellees were to the effect that Appellees did not have notice that Carter Investment Corporation claimed an interest in the premises at the time they purchased the property; that Appellees had peaceable and adverse possession under title or color of title to the westerly 25 feet in dispute for three years; and that the Appellees had peaceable and adverse possession of the 25 feet, cultivating, using, or enjoying the same, paying all taxes thereon and claiming under deeds duly recorded for a period of five years.

■ By appropriate assignments of error, the Appellants complain of any submission of this case to a jury. Their assertions can be narrowed to the proposition that no record title to the disputed west 25 feet of Lot One ever passed to or was conveyed to Mrs. Hirsch. If they be correct, then the following would necessarily follow:

(1) The registration statute as to an innocent purchaser does not apply as the essential prerequisite to the statute's applicability is that the subsequent deed must convey the same land as the previous unrecorded deed. 49 Tex.Jur.2d, p. 418; 59 Tex.Jur.2d 315. As stated in Jemison v. Scottish-American Mortgage Co., 19 Tex.Civ.App. 232, 46 S.W. 886 (1898) (writ ref'd):

"the registration statute which makes void as to purchasers for value and

without notice a prior unrecorded deed has no application here, for the purchaser under these conveyances holds no deed whatsoever to the land covered by the prior unrecorded deed."

(2) Under both the three and five year statutes of limitation, the adverse claimant must claim under a deed containing within its description, the specific land to which he is asserting title or his claim will fail. Carley v. Parton, 75 Tex. 98, 12 S.W. 950 (1889); Bassett v. Martin, 83 Tex. 339, 18 S.W. 587 (1892); Ward v. Forrester, 87 S.W. 751 (Tex.Civ.App. 1905); Giddings v. Winfree, 32 Tex.Civ. App. 99, 73 S.W. 1066 (1903); Porter v. Wilson, 389 S.W.2d 650 (Tex.1965).

In testing the validity of the Appellants' position, we must examine the pertinent instrument involved. The unrecorded deed of 1955 from Mr. and Mrs. Fuentes to Charles R. Carter Investment Corporation conveyed to the grantee, the fee title of the west 25 feet of Lot 1, the land in controversy, and not on easement. Texas Electric Ry. Co. v. Neale, 151 Tex. 526, 252 S.W.2d 451 (1952); 4 Texas Practice Land Titles, Sec. 382. Considering the clause providing for reversion in favor of the grantors, the instrument conveyed at least a determinable fee in the west 25 feet. Haines v. McLean, 154 Tex. 272, 276 S.W.2d 777 at 785 (1955).

█ This is true unless defeated by the Appellees' principal attack on this unrecorded deed. It is asserted by the Appellees that it does not purport to convey any portion of Block One-Hundred-Eleven (111) as the deed description refers only to *Block III*. The Roman numeral for three has been used and the general rule as applied to Roman numerals is to the effect that repeating a letter repeats its value. Therefore, I is equal to one, II is equal to two, and III is equal to three. It is urged that the rule should apply as stated in Scheller v. Groesbeck, 231 S.W. 1092 (Tex.Com.App. 1921, opinion adopted) quoting from Davis v. George, 104 Tex. 106, 110, 134 S.W. 326, 328:

"Parol evidence, whether brought by parties or strangers, cannot make it (a deed) convey land which it does not purport to convey, nor prevent it from conveying that which it clearly purports to convey."

"It is too well settled to admit of doubt that such a deed cannot be collaterally attacked by the parties to it, or their privies, by evidence tending to show an intention different from that which its language unmistakably expresses. * * * A contrary decision would virtually repeal the statutes regulating the conveyance of lands."

A reading of the record in this case reveals that only on appeal has this attack on this deed been made by the Appellees. The attack is foreclosed by the stipulation of counsel who all obviously considered the deed as referring to Block One-Hundred-and-Eleven (111), the agreement relating to introduction of pertinent instruments without proof of execution. The parties stipulated that the 1955 deed from the Fuentes to Charles R. Carter Investment Corporation concerned the property in question, and is binding on all concerned. Jeter v. Radcliff Finance Corp., et al., 247 S.W.2d 186 (Tex.Civ.App.1952, Galveston Ref. n. r. e.).

Of more importance to this case is the meaning and the effect of the deeds of Fuentes to Lewis and Lewis to Appellees. Whether title was established in the Charles R. Carter Investment Corporation is of secondary importance to the Appellees. If the Corporation did not receive title, it would take nothing by its cross-action against the Appellees. However, if the Appellees did not obtain a record title to the disputed property, then as to their action against all Defendants, they would have a take nothing judgment. For all purposes, the Appellant, Mr. Fuentes, who filed no cross-action, would be awarded title due to the effect of the take-nothing judgment and the fact that the legal title would still be in him. Pich v. Lankford, 157 Tex. 335, 302 S.W.2d 645 (1957).

The basic problem therefore, is whether or not a valid exception of the disputed tract has been made in the Fuentes to Lewis and Lewis to Hirsch deeds. An exception is a mere exclusion from a grant of some interest which may be vested in the grantor or outstanding in another. If Fuentes had not conveyed the property previously, it would not avail the Appellees as the giving of a false reason for an exception from a grant does not operate to alter or cut down the interest or estate to the grantee. Pich v. Lankford, supra.

For a clause in a deed to operate as an exception, it must contain a sufficient description to identify the property therein sought to be excepted with reasonable certainty. Lewis v. Midgett, 448 S.W.2d 548 (Tex.Civ.App. Tyler 1969, no writ). And if property is conveyed by describing an entire tract but with a portion excepted, the description of the portion excepted must be capable of being ascertained with certainty or the deed will operate to convey the whole tract, including that which was attempted to be excepted. De Roach v. Clardy, 52 Tex.Civ.App. 233, 113 S.W. 22 (1908, writ ref'd.); Waterhouse, et al. v. Gallup, et al., 178 S.W. 773 (Tex.Civ.App. 1915, Galveston, writ ref'd.).

However, here in view of the fact that the disputed tract had been previously conveyed to the Charles R. Carter Investment Corporation, the language in the Fuentes to Lewis deed, "expecting 25 feet heretofore conveyed", and the language in the Lewis to Hirsch deed, "excepting, however, that portion of said Lot 1 heretofore conveyed" operates to except the previously conveyed land wnhttuibeoi oe-rwasi.l2Iw Mills v. Pitts, 121 Tex. 196, 48 S.W.2d 941 (1932); Smith v. United States, 153 F.2d 655 (5th Cir. 1946); Jemison v. Scottish-American Mortgage Co., supra. The Appellees claiming under deeds containing general exceptions from the overall description, have the burden to show that the lands in controversy were not within the lands excepted.

In addition, the remaining language in the Lewis and Hirsch deeds constitute valid exceptions even if we ignore the language "heretofore conveyed". The plat or map being specifically referred to in the two deeds, it becomes a part of the deeds, and the deed and map constitute the description. Pritchard v. Burnside, 140 Tex. 212, 167 S.W.2d 159 (Tex.Com.App.1943); 19 Tex. Jur.2d 447. Considering the recorded map, one is informed that Mesa runs parallel to the western boundary of Lot 1. Therefore, considering only the Fuentes to Lewis deed without the language "heretofore conveyed", the exception becomes "excepting 25 feet to widen Mesa Road."; and the only reasonable meaning would be a strip of land out of the westerly side of Lot 1 extending the length of that westerly side. A reasonable certainty is all that the law requires. Conviction beyond all peradventure of doubt is unnecessary. Gates v. Asher, 154 Tex. 538, 280 S.W.2d 247, 249 (1955).

The exception being good, then no title to the land here in controversy was conveyed to Mrs. Hirsch. This being true and as she was not conveyed the same land that was previously conveyed by Fuentes to Charles R. Carter Investment Corporation in an unrecorded deed, the recording statute Article 6627 has no application. For the same reason, no recovery can be allowed under the statutes of limitation and therefore, under no theory can the Appellees recover.

The judgment of the trial Court is reversed and rendered in favor of the Appellants and the disputed tract of land be awarded to the Appellant, Charles R. Carter Investment Corporation.

WARD, Justice (dissenting).

I respectfully dissent. The validity of the exclusion clauses partially depend upon the validity of the unrecorded Fuentes to Charles R. Carter Investment Corporation deed. This deed, by the use of the Roman numeral III, conveyed the west 25 feet of Lot 1, Block 3, of the Kern Place Addition and nothing else. It makes no particular map or plat a portion of the deed. As the

property in dispute is located in Block One-Hundred-and-Eleven, the mind might assume that whoever typed the deed inadvertently hit the key on his typewriter for the capital letter "I" instead of the key used to indicate the digit one, i. e. "1". By way of argument to the contrary, in the same deed, the digit one was used at four other locations. There are no words explaining "III" or specifying that it was intended to express the number One-Hundred-Eleven. As a further example, "III" means three and is so used to identify an uncounted number of paragraphs in the Appellants' pleadings, in their motion for instructed verdict, in their objections of the charge of the Court, in their motion to disregard issues, in their motion for new trial, and in their brief where they refer to the assignments of error. Where the description in a deed is plain, clear, and unambiguous, parole evidence is inadmissible to show that it was intended by the parties to convey land not described in the deed and the rule announced in Scheller v. Groesbeck, supra, controls. Unless there is a latent ambiguity in the deed, the parties are bound by its recitals. Browne v. Gorman, 208 S.W. 385 (Tex.Civ.App., Texarkana, 1918, writ ref'd.). Extrinsic evidence is not admissible to vary or contradict the words a grantor uses to indicate the land he intended to convey, and it can not be used to show that the deed was intended to describe different land, or land located elsewhere than that described. This is not an action based on fraud or mistake to correct the description. Davis v. George, 104 Tex. 106, 134 S.W. 326 (1911); 19 Tex.Jur.2d Sec. 163, p. 483.

In Browne v. Gorman, supra, the deed description called for Survey 426, when in fact, the grantor meant Survey 425. The Court held that the deed was not ambiguous and that parole evidence, whether brought by parties or strangers, could not make the deed convey land which it does not purport to convey. In Texas Osage Co-operative Royalty Pool v. Colwell, 205 S.W. 2d 93 (Tex.Civ.App. San Antonio, 1947, writ ref'd, n. r. e.), the deed specified Section 16 in Block P when the grantor allegedly intended to convey Section 16 in Block S, and there was not a Section 16 in Block P. There the grantees in the deed filed suit on three counts to recover what they claimed to be theirs—one in trespass to try title, one that there was a latent ambiguity in the deed and one that a mutual mistake had been made. The count on reformation based on mutual mistake was barred by the statute of limitations and this in turn barred the count on trespass to try title. The Court held there was no latent ambiguity in the deed stating that the description was full, clearly and consistently expressed without any doubt or apparent conflicts and "there appears to be nothing hidden or concealed in the description that would admit extrinsic or parol evidence to explain".

The stipulation entered into by the parties was for the purpose of agreeing to common source of title and lists the instruments which could be admitted into evidence without proof of execution. The stipulation expressly excludes any admission that any of the parties have a chain of title or title to the property involved and in this light, I would hold that it is immaterial to the point under discussion. Therefore, I would hold that the unrecorded deed conveyed none of the property in dispute.

Looking now to the exceptions contained in the deeds to the Appellees, the one from Lewis to the Appellants reading "excepting, however, that portion of said Lot One heretofore conveyed for the widening of Mesa Avenue" is particularly insufficient standing alone. In Waterhouse v. Gallup, 178 S.W. 773 (Tex.Civ.App. Galveston, 1915, writ ref'd); the exception in the general warranty deed provided "save and except one hundred acres previously sold to Joseph Worden" was held to be insufficient as it could not be located with any reasonable certainty. Looking to the Fuentes to Lewis deed either to aid the other deed or to see if a valid exception was made, we see that it provides for the conveyance of the two lots and excepts "25 feet heretofore conveyed to widen Mesa Road". As seen, nothing has been conveyed to widen Mesa Road. The exception does not specify from

which of the two lots the twenty-five feet is excepted, or whether it was excepted from both lots. From the map made a part of the deed, it can be logically assumed it is 25 feet somewhere on the western side. It is just as logical to say it is 25 feet in the southwest corner of the property as any other. The direction is not given which would undoubtedly have made it clear. Walters v. Tucker, Mo., 281 S.W.2d 843 (1955). A beginning point is not definitely stated such as was used in Pitts v. Zavala-Dimmit Counties Water Improvement Dist. No. 1, Tex.Civ.App., 81 S.W.2d 801. There, the reservation was of 20 feet from the top bank of the lake and it was held "sufficient to except out of the grant, a strip 20 feet wide measured from the top bank of the lake". The Appellants have pointed out no case where a description such as before us has been held sufficient. Grants are liberally, exceptions strictly, construed against the grantor. Stroud v. Hunt Oil Co., 147 S.W.2d 564 (Tex.Civ.App. Eastland, 1941, no writ). I would hold that the exception falls.

While the submission of the issues has been of no avail to the Appellees, I would affirm the case on the basis that the Appellees have established title to the disputed tract.